Once the movant has pointed out the absence of evidence supporting the non-moving party's case, the burden shifts to the nonmovant to go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. *Matsushita*, 106 S.Ct. at 1355-56; *Little*, 37 F.3d at 1075; *Leonard v. Dixie Well Serv. & Supply, Inc.*, 828 F.2d 291, 294 (5th Cir. 1987). This burden is not satisfied with "some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little*, 37 F.3d at 1075 (*internal citations omitted*). Rather, the nonmovant must present "significant probative" evidence indicating that there is a triable issue of fact. *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994). The term "significant probative evidence" is equated with "substantial evidence." *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990).

The nonmovant's failure to offer proof concerning an essential element of her case necessarily renders all other facts immaterial and mandates a finding that no genuine issue as to a material fact exists. *Saunders v. Michelin Tire*, 942 F.2d 299, 301 (5th Cir. 1991).

## IV.    SUMMARY JUDGMENT IS REQUIRED

### A.    Plaintiff Barlow's FLSA Claim is Partially Barred by Limitations

Pursuant to the Portal-to-Portal Act, the Fair Labor Standards Act ("FLSA") contains a two-year statute of limitations. *See McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 131-32, 108 S.Ct. 1677 (1988). In 1966, Congress again amended the FLSA and "enacted the 3-year exception for willful violations." *Id.* Plaintiffs bear the burden with respect to proving a willful violation for purposes of obtaining a longer statute of limitations period under the FLSA. *Reyes v. Texas EZPawn, L.P.*, 459 F. Supp. 2d 546, 565-66 (S.D. Tex. 2006). "The non-moving party may not rest

---

[31] *Celotex v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348 (1986)

on the mere allegations of denials of its pleading, but must respond by setting forth specific facts indicating a genuine issue for trial." *Id.*

Plaintiffs filed this lawsuit on July 5, 2007. *See Original Complaint.* In their Original Answer, Defendants pled limitations as a defense. *See Original Answer at 1, Third Defense.* Hence, unless Barlow can establish that Defendants acted willfully, any overtime claim related to time worked prior to July 5, 2005, is barred by limitations.

In *McLaughlin*, the Supreme Court set forth the following standard for willfulness: "that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin*, 486 U.S. at 133. In this case, Barlow testified that he does not know of any facts that support the claim that in not paying him overtime, Defendants were acting knowingly, willfully or with reckless disregard for their legal obligations. *C-173.* In addition, Barlow never asserted an entitlement to overtime at any time during his tenure at DCS. *C-103.* As stated above, Barlow was aware of the DCS complaint procedure, he signed the DCS employee handbook acknowledgement form, and yet never made a complaint. Therefore, he has failed to submit evidence that raises a genuine issue of material fact as to willfulness and the Court should impose the FLSA's two-year limitations period on Barlow's claim.

Because this case was filed on July 5, 2007, all of Barlow's allegations pertaining to work prior to July 5, 2005, are barred as a matter of law. *See Edwards v. Alta Colleges, Inc.*, No. SA-03-CA-0538 OG (NN), 2005 U.S. Dist. LEXIS 3753 (W.D. Tex. Feb. 28, 2005) (because plaintiff provided insufficient basis upon which to conclude defendants knowingly violated the FLSA or recklessly disregarded the facts its actions violated the FLSA, and plaintiff had not complained about her classification as a salaried employee while working for Defendants, summary judgment

granted as to issue of willfulness and general two year limitations period imposed); *Scott v. Farouk Systems, Inc.*, No. H-06-22182, 2007 U.S. Dist. LEXIS 57693 at *10-14 (S.D. Tex. Aug. 8, 2007).

**B.     Plaintiffs Barlow, Nudell, and Robert Beltran Were Executive Employees And Therefore Exempt From Overtime**

"Executive employees" are exempt from the overtime provisions of the FLSA. *See* 29 CFR § 541.100 (West 2008). The determination of whether an employee is exempt from the FLSA's overtime compensation provisions is a question of law for the judge, not of fact for the jury. *Lott v. Howard Wilson Chrysler-Plymouth, Inc.*, 203 F.3d 326, 331 (5th Cir. 2000).

Plaintiffs Barlow, Nudell, and Robert Beltran qualify for the executive exemption pursuant to 29 C.F.R. § 541.100. The term "employee employed in a bona fide executive capacity" means any employee:

(1)     Compensated on a salary basis at a rate of not less than $455 per week, exclusive of board, lodging or other facilities;

(2)     Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;

(3)     Who customarily and regularly directs the work of two or more other employees; and

(4)     Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 CFR § 541.100.

Here, Barlow, Nudell and Robert Beltran fit squarely into each of these categories.

The Administrator of the Wage and Hour Division of the United States Department of Labor ("DOL") has issued an opinion letter in that addresses the applicability of the executive exemption to construction superintendents. *See* Wage and Hour Opinion Letter (FLSA2007-3) (Jan. 25,

2007).[32]  The Administrator's letter makes clear that the Superintendents in this case qualify for the executive exemption. *Id.*

The superintendents discussed in the DOL Opinion Letter were employed by an environmental engineering firm that performed construction projects for the government at various locations. *Id.*  The superintendents had a primary duty of supervising the daily activities of the construction projects. *Id.*  This included supervising at least two employees, and overseeing the work of employees and contractors. *Id.*  The superintendents would also meet with client representatives, make purchasing decisions as needed for the project, complete reporting, and make recommendations regarding the terms and conditions of some employees' employment. *Id.*  As detailed below, plaintiffs Barlow, Nudell, and Robert Beltran meet all four elements of the executive exemption and performed the same activities as the superintendents determined to be exempt in the DOL Opinion Letter; and are therefore also exempt.

1.   **Plaintiffs Barlow, Nudell, and Robert Beltran were paid on a salary basis at a rate of not less than $455 per week**

As with the superintendents in the DOL Opinion Letter, Plaintiffs Barlow, Nudell, and Robert Beltran were all paid "far in excess of $455.00 per week." *Id*; *see* II. Factual Background detailed above.

2.   **Plaintiffs Barlow, Nudell, and Robert Beltran held a position the primary duty of which was to maintain a recognized department or subdivision**

As with the superintendents from the DOL Opinion Letter, Plaintiffs Barlow, Nudell, and Robert Beltran had a primary duty of supervising "the day-to-day activities of the construction

---

[32] *See also Jones v. ENSR Corporation*, 1997 U.S. App. LEXIS 16404 (6th Cir. July 1, 1997) (field supervisor exempt, even when he reported to a project manager, because he supervised, trained on safety, opined on adjusting terms and conditions, engaged in client relations, reported job progress, helped determine types of materials needed, and took part in physical labor with the crew).

project." Wage and Hour Opinion Letter (FLSA2007-3) (Jan. 25, 2007).[33]  Similarly, Plaintiffs'

duties are included in the type of activities constituting "management" within the meaning of 29

C.F.R. § 541.102.  Management includes:

> activities such as interviewing, selecting, and training of employees; setting and
> adjusting their rates of pay and hours of work; directing the work of employees;
> maintaining production or sales records for use in supervision or control;
> appraising employees' productivity and efficiency for the purpose of
> recommending promotions or other changes in status; handling employee
> complaints and grievances; disciplining employees; planning the work;
> determining the techniques to be used; apportioning the work among the
> employees; determining the type of materials, supplies, machinery, equipment or
> tools to be used or merchandise to be bought, stocked and sold; controlling the
> flow and distribution of materials or merchandise and supplies; providing for the
> safety and security of the employees or the property; planning and controlling the
> budget; and monitoring or implementing legal compliance measures.

29 C.F.R. § 541.102.

Plaintiffs Barlow, Nudell, and Robert Beltran directed employees and contractors, met with

client representatives, made purchasing decisions as needed for projects, completed daily reports,

and made recommendations regarding the terms and conditions of some employees' employment, all

of which the DOL Opinion Letter determined met the definition of "management."

Although Plaintiffs performed some non-exempt work, an exempt employee may

simultaneously perform exempt and non-exempt work without destroying his exempt status.

> Generally, exempt executives make the decision regarding when to perform non-
> exempt duties and remain responsible for the success or failure of business
> operations under their management while performing the non-exempt work.
>
> 29 C.F.R. § 541.106(a).

As an example, courts have commonly held that managers of retail establishments are

exempt, "notwithstanding the fact that they spent the majority of their time performing non-

---

[33] The DOL Opinion Letter assumed that a construction project was a recognized department or subdivision.

exempt tasks," many of which involved quite a bit of physical labor. *Posely v. Eckerd Corp.*, 433 F. Supp. 2d 1287, 1301-03 (S.D. Fla. 2006) (collecting cases). Plaintiffs Barlow, Nudell, and Robert Beltran made the decision of when to perform non-exempt duties. Plaintiff Barlow admitted that he did not work with the crew on every job. *C-93*. Plaintiff Nudell also admitted that Superintendents would work not because they were required to, but sometimes that is what it took to get the job done. *B-46*.

### 3. Plaintiffs Barlow, Nudell, and Robert Beltran customarily and regularly directed the work of two or more other employees

As with the superintendents from the DOL Opinion Letter, plaintiffs Barlow, Nudell, and Robert Beltran customarily and regularly supervised at least two DCS employees. Plaintiff Barlow admitted that when he had other DCS employees on the job-site and he was serving as Superintendent, he managed those employees. He had at least two other DCS employees on the Elizabethtown, PA, project and the Waterville, ME, project. Those employees considered him to be the supervisor on those jobs. Barlow's employment records indicate that he customarily and regularly had two or more other DCS employees on his job sites after August 10, 2006. Subsequent to that date, he supervised at least two other DCS employees approximately 76% of the time he worked on a project.[34] Barlow is also covered by the other exemptions detailed below. Therefore, any of Barlow's time prior to August 10, 2006, is covered by those exemptions.

Plaintiff Nudell admitted he oversaw the tasks of any DCS employees on-site. Nudell's employment records indicate that he customarily and regularly had two or more DCS employees on his job sites after August 10, 2006. In fact, for the remainder of 2006, Nudell supervised two or

---

[34] See footnote 14, *supra*.

more other DCS employees every week he worked on a project.[35]  Nudell subsequently took some paid time off, returning to work in March 2007.  Subsequent to August 10, 2006, as a whole, he supervised at least two other DCS employees more than 60% of the time he worked on a project. *Id.*  Nudell is also covered by the other exemptions detailed below.  Therefore, any of Nudell's time prior to August 10, 2006, is covered by those exemptions.

Plaintiff Robert Beltran admitted that when he was a Superintendent at DCS, there were at least two other DCS employees on the projects, not including temporary workers.  *D-45-54.*  Robert Beltran's employment records indicate that he customarily and regularly had two or more DCS employees at his job sites every week he worked on a project.[36]  Robert Beltran is also covered by the other exemptions detailed below.

> **4.**    **Plaintiffs Barlow, Nudell, and Robert Beltran possessed such status that their suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees was given particular weight**

As with the superintendents from the DOL Opinion Letter, DCS Superintendents could make recommendations regarding the terms and conditions of other DCS employees' employment that would be given particular weight.  To determine whether an employee's suggestions and recommendations are given "particular weight," factors to consider include "whether it is part of the employee's job duties to make such suggestions and recommendations; the frequency with which such suggestions and recommendations are made or requested; and the frequency with which the employee's suggestions and recommendations are relied upon." 29 C.F.R. § 541.105.  However, the

---

[35] See footnote 6, *supra.*

[36] See footnote 25, *supra.*

regulations do not require the employee to have authority to make the ultimate decision, and a higher level manager's recommendation may be given more importance. *Id*.[37]

Plaintiffs Barlow, Nudell and Beltran certainly had the ability to make employment recommendations that would be given particular weight. *See Factual Background detailed above and Affidavit of Gregg Gregoire attached at Exhibit "T"*. Superintendents such as Barlow actually fired people on the project site. They recommended that other DCS employees be removed from the project, and those recommendations were acted on by DCS. With respect to compensation, Superintendents recommended that other DCS employees receive raises. They also took applications from individuals responding to local DCS ads and interviewed the applicants. If the Superintendent thought the candidate was a good one, they could signify to the company (i.e., Nudell's star in the corner of the application). These recommendations were acted on by DCS. For instance, Nudell could not remember a time when he said not to hire someone and DCS did so anyway. Similarly, Beltran recommended that John Beltran, Juan Beltran, Jimmy Beltran, and David Garcia be hired and DCS acted on those recommendations. *T-3*. Superintendents also played a role in determining whether people would be put on the payroll. As an example, Nudell reported to DCS that someone was not doing his job and DCS took that person off the job. Such changes were made when Superintendents asked and no Superintendent testified their suggestions were rejected. As Robert Beltran conceded in his deposition, a Superintendent at DCS hired all sub-contractors, managed all other employees through the completion of projects, and had complete project ownership and accountability in their hands. *D-39*.

---

[37] *See also Jones v. ENSR Corporation*, 1997 U.S. App. LEXIS 16404 (6th Cir. July 1, 1997) (Plaintiff was a field supervisor with similar duties to Plaintiffs who reported to a project manager but qualified for the executive exemption because he described himself as the "guy in charge" because it was his job to "get the job done" and he believed but did not know for sure that management would follow his advice when it came to recommending changes for terms and conditions of other employees employment).

**C.     Plaintiffs Were Administrative Employees And Therefore Exempt From Overtime**

"Administrative employees" are exempt from the overtime provisions of the FLSA.  *See* 29

CFR § 541.200.  The determination of whether an employee is exempt from the FLSA's overtime

compensation provisions is a question of law for the judge, not of fact for the jury.  *Lott v. Howard*

*Wilson Chrysler-Plymouth, Inc.*, 203 F.3d 326, 331 (5th Cir. 2000).

Plaintiffs qualify for the administrative exemption pursuant to 29 C.F.R. § 541.200.  The

term "employee employed in a bona fide administrative capacity" means any employee:

> (1)     Compensated on a salary or fee basis at a rate of not less than $455 per
> week;
> (2)     Whose primary duty is the performance of office or non-manual work
> directly related to the management or general business operations of the
> employer or the employer's customers; and
> (3)     Whose primary duty includes the exercise of discretion and independent
> judgment with respect to matters of significance.

29 CFR § 541.200.

Plaintiffs meet all three elements of this definition, and therefore qualify for the

administrative exemption .

### 1.     Plaintiffs were paid on a salary basis at a rate of not less than $455 per week

One or more of the Plaintiffs began their work at Dependable as hourly, non-exempt

workers.  However, when they were promoted to Superintendent/Foreman positions, they were paid

a salary of not less than $455 per week.  Those Plaintiffs who began their work at DCS as

Superintendents/Foreman were always paid a salary of more than $455 per week.

### 2.     Plaintiffs had a primary duty that included the performance of nonmanual work directly related to the management or general business operations of DCS or DCS's customers

Plaintiffs were team leaders for DCS.  The regulations state that an employee who leads a

team of other employees assigned to complete major projects for the employer generally meets the

duties requirements for the administrative exemption. 29 C.F.R. § 541.203(c). Team leaders do not have to have direct supervisory responsibility over the other employees on the team. 5 C.F.R. § 551.206(i). Additionally, § 551.206(i) must be read in conjunction with § 551.206(b)(2), stating that an employee may carry out "major assignments in conducting the operations of the organization," which does not limit the exemption to leading staff functions. Pay Administration Under the Fair Labor Standards Act, 72 Fed. Reg. 52753, 52755 (Sept. 17, 2007) (to be codified at 5 C.F.R. pt. 551).[38]

Plaintiffs Villegas, Barlow, Robert Beltran and Beltz themselves admit that they were team leaders when they were the Superintendent on a DCS construction project. Plaintiffs also concede that each of these construction projects was a major project for DCS.[39] Furthermore, managing construction projects is *the* general business operation of DCS. Plaintiffs were responsible for the "day-to-day operations" of the job site and ensuring that the construction projects were completed on-time and on budget, that there were adequate materials, and that customers were satisfied. Therefore, Plaintiffs' primary duty is "directly related" to the administration of that business operation.

In addition, Plaintiffs Barlow, Nudell, and Villegas also went out on bids. In this way, these Plaintiffs helped to carry out DCS management policies. This was how DCS acquired new projects, and there was absolutely no manual labor involved. This was also something a simple laborer

---

[38] The team leader exemption has been applied to an employee who would inspect work and serve as the primary contact person with customers, even if he did not have direct supervisory authority over other employees. *Cash v. Cycle Craft Company, Inc.*, 482 F. Supp. 2d 133, 138-39 (D. Mass. 2007).

[39] Construction projects for DCS, like auctions for an auction company, are major projects. *See Orr v. James D. Julia, Inc.*, 2008 U.S. Dist. LEXIS 49687, *44-47 (D. Maine June 27, 2008) ("An auction is, essentially, a "production," . . . [and] although auctions and sales are "produced" by JDJ, producing an auction is *the* general business operation that JDJ engages in, and Orr's primary duty is "directly related" to the administration of that business operation. That fact means that Orr's work was predominately oriented toward the administration of an

would not do.  When Plaintiffs went out on bids, they advised management, planned, negotiated, represented the company, and performed business research.  Therefore, Plaintiffs Barlow, Nudell, and Villegas performed work directly related to the running or servicing of DCS's business.

**3.      Plaintiffs had a primary duty that included the exercise of discretion and independent judgment with respect to matters of significance**

The exercise of discretion or independent judgment does not have to be customary or regular; it merely has to be included in the employee's primary duty.  Therefore, the employee must exercise "some discretion," but not necessarily in connection with each task the employee performs.  *See* Daniel B. Abrahams, et. al., Employer's Guide to the Fair Labor Standards Act, p. 153.  The Code of Federal Regulations provides that:

> The exercise of discretion and independent judgment implies that the employee has authority to make an independent choice, free from immediate direction or supervision.  However, employees can exercise discretion and independent judgment even if their decisions or recommendations are reviewed at a higher level.  Thus, the term "discretion and independent judgment" does not require that the decisions made by an employee have a finality that goes with unlimited authority and a complete absence of review.  The decisions made as a result of the exercise of discretion and independent judgment may consist of recommendations for action rather than the actual taking of action.  The fact that an employee's decision may be subject to review and that upon occasion the decisions are revised or reversed after review does not mean that the employee is not exercising discretion and independent judgment.

29 C.F.R. § 541.202(c).

According to 29 C.F.R. § 541.202(b), factors to consider when determining whether an employee exercises discretion and independent judgment with respect to matters of significance include, but are not limited to:

- Whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices;

---

event rather toward selling or servicing products."  The auctions were therefore "major projects" for JDJ (emphasis in original).

- Whether the employee carries out major assignments in conducting the operations of the business;
- Whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business;
- Whether the employee has authority to commit the employer in matters that have significant financial impact;
- Whether the employee has authority to waive or deviate from established policies and procedures without prior approval;
- Whether the employee has authority to negotiate and bind the company on significant matters;
- Whether the employee provides consultation or expert advice to management;
- Whether the employee is involved in planning long- or short-term business objectives;
- Whether the employee investigates and resolves matters of significance on behalf of management; and
- Whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.

29 C.F.R. § 541.202(b) (emphasis added).

Even if employees meet only two or three of these factors, they are nevertheless exercising discretion and independent judgment. 69 Fed. Reg. 22,143; *Ferrell v. Gwinnett County Bd. of Educ.*, 481 F. Supp. 2d 1338, 1348 (N.D. Ga. 2007); *Employer's Guide to the Fair Labor Standards Act*, p. 153, Tab 300. In fact, it is likely to be sufficient if a worker's duties meet just one factor, provided the discretion exercised related to a matter of significance and is not an incidental part of the job. *Employer's Guide to the Fair Labor Standards Act*, p. 153, Tab 300.

As stated in section (C)(2) above, Plaintiffs were team leaders who meet the duties requirements for the administrative exemption because they carry out major assignments in conducting the operations of the business. This alone is sufficient discretion. However, Plaintiffs also meet additional factors.[40]

---

[40] The regulations allow for multiple employees to perform the same or similar exempt work, so for these matters of discretion, it would not matter if multiple Plaintiffs were on the same project. 29 C.F.R. § 541.202(d).

33

Plaintiffs had the authority to waive or deviate from established policies and procedures without prior approval. Plaintiffs had discretion and independent judgment with respect to acquiring materials for the DCS job site. They made daily assessments of what was needed on the project site and then used either their company issued Home Depot credit card to purchase what was needed or paid out of pocket and were reimbursed. Barlow also had blank DCS checks that he could use for supplies, and there were never any issues with him using these checks. The ability to acquire these materials is significant, because without them, the projects could not move forward.

As stated above, Plaintiffs carried out major assignments in conducting the operations of the business – they completed each of DCS' projects. In addition to being team leaders, Plaintiffs served as a conduit between DCS and contractors, inspectors, landlords, customers, and vendors. These activities are is also detailed in the daily reports they filled out, which, according to Plaintiffs, took them two hours a day to complete. Generally, any recommendations made in these daily reports were taken up by DCS. Plaintiffs could also spend up to two hours at a time with inspectors, and there could be back to back inspections on a given day. Plaintiffs also took care of lien waivers and did the turnover with the client when projects were done. Plaintiffs were also responsible for the DCS tool equipment list and various punch lists, including those they created and maintained for themselves. DCS valued Plaintiffs' views on the abilities of various subcontractors. For example, there were times Barlow would recommend the removal of a subcontractor and DCS would either send the subcontractor a 24-hour notice or just go ahead and replace the subcontractor.

Plaintiffs represented the company in handling complaints, arbitrating disputes and resolving grievances. As stated above, Plaintiffs were the on-site DCS representative, and were required to resolve on-site issues, whether they be with DCS employees, customers, vendors, or subcontractors.

Plaintiffs provided consultation and expert advice to management. For example, Nudell took measurements for a store and apparently even okayed a construction drawing. He admitted that a laborer would never be permitted to approve a drawing. Villegas also communicated solutions to DCS to resolve on-site issues.

Plaintiffs had the authority to negotiate and bind the company on significant matters. Barlow, Nudell, and Villegas participated in bid work, which required substantial discretion and independent judgment in negotiating on behalf of DCS. The work involved surveying project sites and meeting with potential subcontractors to understand their pricing, negotiate with them, and incorporate that information into DCS bids.

### 4.    Plaintiffs also meet the primary duty requirement for the administrative exemption because of the combination exemption

Assuming *arguendo* that any of the Plaintiffs do not meet the duties test of either the executive or administrative exemptions, then based on the facts as set forth in II. Factual Background above, those plaintiffs qualify for the combination exemption.    An employee performing duties that fall under more than one individual exemption, none of which separately represents his primary duty, may be exempt under the combination exemption if those duties, when combined, constitute his primary duty. 29 C.F.R. § 541.708. The combination exemption permits considering different exempt duties together for purposes of meeting the primary duty test. *IntraComm, Inc. v. Bajaj*, 492 F.3d 285, 294 (4th Cir. 2007).

### D.    Plaintiffs Were Covered By The Motor Carrier Act And Are Therefore Exempt From Overtime

The Motor Carrier exemption is a provision within the Fair Labor Standards Act that exempts certain employees from the overtime requirements of the Act. 29 U.S.C. § 213(b)(1). The exemption specifically covers any employee with respect to whom the Secretary of Transportation

35

has power to establish qualifications and maximum hours of service pursuant to the provisions of Section 31502 of the Motor Carrier Act ("MCA").   Section 31502 permits the Secretary of Transportation to prescribe requirements for "qualifications and maximum hours of service of employees of, and standards of equipment of, a motor private carrier, when needed to promote safety of operation."  49 U.S.C. § 31502(b)(2).

A motor private carrier is defined to include a person transporting property by motor vehicle when (i) the transportation is between a place in one state and a place in another state; (ii) the person is the owner, lessee, or bailee of the property being transported; and (iii) the property is being transported to further a commercial enterprise.  49 U.S.C. § 13102(15); 49 U.S.C. § 13501(1)(A).

The Administrator of the Wage and Hour Division of the DOL issued an opinion letter in 2005 that addresses the applicability of the Motor Carrier exemption to medical equipment installation technicians ("installers").  *See* Wage and Hour Opinion Letter (FLSA2005-27) (Aug. 26, 2005).   The installers would travel to facilities throughout the United States where they would install new equipment or remove existing equipment.  They travelled across state lines between 20-35 times a year by airplane or leased/rented vehicles, and travelled with tools and equipment weighing between 35 and 700 pounds.  The Administrator determined that the employer was a motor private carrier and the installers qualified for the Motor Carrier exemption.[41]

---

41 The August 26, 2005, Opinion Letter gives further examples of what qualifies for the motor carrier exemption, specifically:

> "[i]n an Opinion Letter . . . dated June 5, 1974, we found that the transportation of service parts used to make technical repairs qualified as the transportation of property under the MCA. Additionally, in an Opinion letter dated August 17, 2004 . . . the transportation of display rack parts and replacement parts qualified as interstate transportation under the MCA [and] the court in Anderson v. Timber Products Inspection, Inc., 334 F. Supp. 2d 1258, 1261-1 (D. Ore. 2004), found that tools used by lumber inspectors constitute property transported in interstate commerce."

DCS is likewise a motor private carrier. First, all of the Plaintiffs, like the installers, regularly travelled with the property between one state and another. Plaintiff Barlow admitted driving approximately 10,000 miles across the country. *C-107.* Barlow's employment records indicate that prior to August 10, 2006, more than half of the weeks he was employed by DCS he traveled interstate. All of the other Plaintiffs engaged in extensive interstate travel.[42] *B-14.*

Second, the Plaintiffs transported property of which DCS was the owner, lessee, or bailee, across state lines.[43] DCS supplied Plaintiffs with tools and equipment they would need so their team could carry out their DCS work, including a trailer. *B-76-79.*.

Third, the property transported by the Plaintiffs was used by DCS to further its business, which is a commercial enterprise.[44] DCS is a nationwide and full-service general contractor. Therefore, all of the DCS tools and equipment transported by Plaintiffs unquestionably were used to further DCS's business.

Finally, Plaintiffs, like the installers in the DOL Opinion Letter, drove vehicles containing the property in interstate commerce, which the DOL considers a safety-affecting activity.[45] Plaintiffs actually drove vehicles to the different jobs, as evidenced by the mileage they claimed

---

[42] Notably, some Plaintiffs testified that they were motivated to leave DCS because of the quantity of travel and extended periods of time on the road, away from family. *F-49; V-15; C-47.*

[43] *See Friedrich v. U.S. Computer Serv.*, 974 F.2d 409, 412 (3d Cir. 1992) (holding that tools, parts, and equipment transported by the employees constituted "property" because the employees needed the items to perform the services; *Sinclair v. Beacon Gasoline Co.*, 447 F. Supp. 5, 8 (W.D. La. 1976) (holding tools, equipment, and supplies transported interstate and used to repair and maintain pipeline systems constituted property), aff'd, 571 F.2d 978 (5th Cir. 1978).

[44] In *Friedrich v. U.S. Computer Serv.*, 974 F.2d 409 (3d Cir. 1992), the court held that field engineers were exempt from the overtime compensation requirements due to the fact that they transported the company's property in interstate commerce in order to further defendant's commercial enterprise.

[45] As long as the percentage of work time spent in interstate travel exceeds one-percent it is not *de minimis* and plaintiff motor private carrier drivers directly affect safety in interstate commerce. *Anderson v. Timber Prods. Inspection, Inc.*, 334 F. Supp. 2d 1258, 1263 (D. Or. 2004)

reimbursement for in their expense reports. Therefore, the Plaintiffs, like the installers, qualify for the Motor Carrier exemption.

While it is true that the MCA has been amended to require transportation in a "commercial vehicle," which is defined as a vehicle weighing more than 10,000 pounds, Congress enacted and the President signed the SAFETEA-LU Technical Corrections Act of 2008. Under that act:

> An "employer shall not be liable for a violation of section 7 of the [FLSA] with respect to a covered employee if ... the violation occurred in the 1-year period beginning on August 10, 2005 ... and ... as of the date of the violation, the employer did not have actual knowledge that the employer was subject to the requirements of such section with respect to the covered employee."

SAFETEA-LU Technical Corrections Act of 2008, Pub. L. No. 110-244, § 306, 122 Stat. 1572, 1620 (2008).

As detailed above, Defendants did not have any actual knowledge and to this day do not believe that they are subject to FLSA with respect to any of the Plaintiffs. Therefore, the Plaintiffs are exempt, at a minimum, for alleged violations occurring before August 10, 2006.

**E.      Defendants Never Willfully Denied Plaintiffs Any Alleged Overtime**

Assuming *arguendo* that Defendants are liable to Plaintiffs for any of the alleged overtime violations, Defendants did not willfully deny Plaintiffs overtime compensation. Defendants relied in good faith on Administaff for DCS's human resources administration and compliance. DCS filled out the new hire paperwork according to the guidelines on the forms provided by Administaff and paid its employees accordingly. All employees who were classified as hourly or nonexempt according to the paperwork received overtime compensation when they worked in excess of 40 hours per week. None of the Plaintiffs ever complained to DCS that they were paid too little or should receive overtime, even though they were all aware of and agreed to comply with the DCS complaint procedure. Furthermore, none of the Plaintiffs have proffered evidence that DCS should

have known that Plaintiffs were entitled to overtime.   Accordingly, Defendants are entitled to summary judgment on Plaintiffs' claim that Defendants willfully violated the Fair Labor Standards Act. *See Edwards v. Alta Colleges, Inc.*, No. SA-03-CA-0538 OG (NN), 2005 U.S. Dist. LEXIS 3753 (W.D. Tex. Feb. 28, 2005); *Scott v. Farouk Systems, Inc.*, No. H-06-22182, 2007 U.S. Dist. LEXIS 57693 at *10-14 (S.D. Tex. Aug. 8, 2007).

**F.    Plaintiffs' Claims Must Be Dismissed Because They Have Not Engaged In Discovery And Have Not Abided By This Court's Order**

Plaintiffs Parsons and Gutierrez should be dismissed from this suit, or have judgment entered against them, because they have failed to obey a court order and have also failed to participate in discovery.

If a party fails to obey an order to provide or permit discovery, the court may dismiss the action or proceeding in whole or in part, or render a default judgment against the disobedient party. Fed. Rules Civ. Pro. 37(b)(A)(v)-(vi). This is also true if a party fails, after being served with proper notice, to appear for that person's deposition; or serve its answers, objections, or written response. Fed. Rules Civ. Pro. 37(d)(1)(i)-(ii); (3). *See also Hickman v. Fox Television Station, Inc.*, 231 F.R.D. 248, 254 (S.D. Tex. 2005) (stating that Rule 37(b) makes explicit the courts' inherent power to control its docket by dismissing a case as a sanction for failure to obey court orders).

Defendants in this case sought to find mutually agreeable dates to depose Plaintiffs, and sent notices of deposition to those plaintiffs where agreement could be reached. For example, Defendants sent Gutierrez a notice of deposition on June 6, 2008. *See Rule 37 (b)(2)(A); support attached hereto as Exhibit "U" at June 6, 2006, Correspondence ("U-June 6").* The deposition was to take place on June 19, 2008, at Plaintiffs' attorney's office. *Id.* Defendants also requested

at that time that Parsons be presented for deposition, but did not send Parsons a notice of deposition because Parsons could not agree on a date and had not provided Defendants with any alternative dates. *Id.*

On June 12, 2008, the Court issued an Order DENYING Plaintiffs' Motions to Quash Defendants' Depositions on Written Questions. In that order, the Court stated:

> Plaintiffs are ordered to provide complete and verified responses to Defendants' Interrogatory Number 3 and to execute the Employment Records Authorization served on each of them . . . The discovery deadline is extended thirty days, until July 20, 2008, for the limited purpose of permitting Defendants time to obtain Plaintiffs' employment records and to conduct Plaintiffs' depositions after having received the employment records.

By June 19, 2008, Defendants had not received the Court-ordered documentation. Therefore, the depositions that had been noticed, including the one for Gutierrez, were postponed. On June 27, 2008, Defendants requested available dates on which Plaintiffs could be deposed, assuming any outstanding verified Interrogatory Responses and Employment Authorization forms would be received by the deposition dates. *U-June 27*. On August 1, 2008, Plaintiffs recommended dates for various Plaintiffs depositions, but excluded Parsons and Gutierrez. *U-August 1*.

Then on August 21, 2008, Defendants requested that any Plaintiffs that had not yet been deposed confirm their availability. *U-August 1*. On September 3, 2008, Plaintiffs responded that Parsons and Gutierrez still were not available for depositions. *U-September 3*. According to the correspondence, Parsons resides in New York and had not been able to provide a date for deposition. *Id.* Plaintiffs' counsel was also unable to confirm Gutierrez's availability. *Id.*

The discovery deadline has passed. Yet, Gutierrez has violated the Court's Order by not providing an employment records authorization, an interrogatory verification, or any response to the

40

Interrogatory seeking employer information. *U-September 11*. Neither Parsons nor Gutierrez have ever agreed to submit to depositions, in violation of Rule 37 and the Court's Order denying Plaintiffs' Motion to Quash.

Such conduct should not be countenanced by the Court. It has prejudiced Defendants and made it impossible for them to defend against the claims of these two Plaintiffs. Therefore, Defendants request that Plaintiffs Gutierrez and Parsons be dismissed from this lawsuit. *See Wilson v. Rentway, Inc.*, No. 4:03-CV-0636-A, 2004 U.S. Dist. LEXIS 2086, *2 (N.D. Tex. Feb. 11, 2004).

## V.      CONCLUSION AND PRAYER

For the reasons stated in this motion, Defendants respectfully request that the Court enter judgment in their favor, award them the attorneys' fees and costs incurred in defending against this lawsuit, and award them any other relief to which they may be entitled.

Respectfully submitted,

BRACEWELL & GIULIANI LLP

By: _Jay Aldis_____

Jay Aldis
State Bar No. 00785656

711 Louisiana, Suite 2300
Houston, Texas 77002-2781
Telephone:     (713) 221-1381
Facsimile:     (713) 222-3276

Attorneys for Defendants

## CERTIFICATE OF SERVICE

I certify that on this the __17TH__ day of October, 2008, a true and correct copy of the foregoing document was sent to the following counsel by electronic and/or first class mail:

> Mr. Mark Siurek
> Warren & Siurek, LLP
> 3355 West Alabama
> Suite 1010
> Houston, Texas 77098

_Jay Aldis_____

Jay Aldis

HOUSTON\2230703.5

42

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **MICHAEL VILLEGAS, ET AL.** | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION NO. H-07-02165** |
| | § | |
| **DEPENDABLE CONSTRUCTION** | § | |
| **SERVICES, INC., ET AL.** | § | |
| | § | |
| *Defendants.* | § | |

## ORDER

On this date came on to be heard Defendants' Motion for Summary Judgment. Having

considered the Motion, the Court finds that it should be GRANTED.


SIGNED on this _____ day of _____, 2008.


_____
KEITH P. ELLISON
United States District Judge